**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 28, 2013**

# In the Court of Appeals of Georgia

A13A0744. GRAHAM et al. v. FALLICK et al.

MCFADDEN, Judge.

Derrick and Marsha Graham brought an action against Ira Fallick and Adair Construction, Inc. (for which Fallick was working as a subcontractor) for damages arising from a collision at an intersection controlled by a four-way stop sign. Some of the trial evidence showed that the two vehicles had approached the intersection at approximately the same time. The trial court charged the jury that the rule of the road requiring the driver on the left to yield to the driver on the right when two vehicles reach an intersection at the same time does *not* apply to intersections controlled by four-way stop signs. We agree with the Grahams that this charge was an incorrect statement of the law and that the trial court erred in giving the charge and in denying

certain of the Grahams' requested charges. We further find that these errors require reversal.

The trial evidence conflicted on how the accident occurred. Derrick Graham testified that he brought his vehicle to a full stop at an intersection with a four-way stop sign. He saw a truck, driven by Fallick, approaching the stop sign on the cross road. Believing it was safe to proceed, Graham began to make a left turn, but the truck did not stop and collided with his vehicle.

Fallick testified that he approached the intersection and stopped at the stop sign. A "second to two" later, the vehicle driven by Graham arrived at the intersection, "coming to a slower stop" but not stopping completely. Both vehicles then entered the intersection at the same time and collided.

A law enforcement officer who responded to the accident testified that Derrick Graham told him he had arrived at the intersection first and stopped, then entered the intersection when he saw Fallick's truck slowing down as it approached the intersection. The officer testified that Fallick told him that both vehicles stopped at the intersection at the same time, that both drivers thought they could go first, and that they both pulled into the intersection at the same time and collided. The officer testified that he found Fallick at fault and issued him a citation for failure to yield the

right of way at an intersection, explaining that, "by state law when you both stop at the same time, you have to yield to the vehicle to your right."

At the charge conference, the trial court informed the parties that he "totally disagree[d] with the officer that the yield of right-of-way applies at stop signs" but instead thought it "applies where there is no stop sign." The trial court stated that he would not charge the jury that the vehicle on the right had the right of way, and at the trial court's direction Fallick's counsel submitted an alternative charge. Over the Grahams' objection, the trial court charged the jury:

> Now, you've heard testimony concerning which driver has the right-of-way at an intersection. There is a rule of the road which provides that when two vehicles reach an intersection at the same time, the driver on the left must yield to the vehicle on the right.

> I charge you that this rule of the road that I just referenced only applies to intersections which are not controlled by a traffic-control device such as a stop sign. This rule does not apply to an intersections – to intersections which have a four-way stop.

The jury returned a verdict in favor of the defendants.

We agree with the Grahams that the charge given by the trial court was an incorrect statement of the law. OCGA § 40-6-70 (a) pertinently provides that "[w]hen

3

two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right[.]" This language does not limit the applicability of this right of way rule to uncontrolled intersections. Rather, the rule applies to intersections generally, with certain exceptions specified in OCGA § 40-6-70. Some of those exceptions, set forth in OCGA § 40-6-70 (a), concern the right of way at certain types of intersections not at issue here (i.e., an uncontrolled intersection where one highway terminates into another, an intersection with an inoperative traffic light, and an intersection with a flashing signal or a "pedestrian hybrid beacon"). The remaining exception, set forth in OCGA § 40-6-70 (b), provides that the "right of way rule declared in subsection (a) of this Code section is modified at through highways and otherwise as stated in this chapter."

Fallick and Adair Construction argue that OCGA § 40-6-70 (a) is modified by OCGA § 40-6-72 to preclude its application to intersections controlled by four-way stop signs. We disagree. OCGA § 40-6-72 (b) provides that, after stopping at a stop sign, a driver "shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or

4

junction of roadways." It does not address the circumstance of two vehicles arriving and stopping at an intersection at approximately the same time. In that circumstance, neither vehicle is "in the intersection" nor "approaching" the intersection, the situations addressed in OCGA § 40-6-72 (b). Instead, both vehicles are stopped and waiting to enter the intersection. The right of way rule declared in OCGA § 40-6-72 (b) offers no guidance to the drivers as to how or whether a driver could gain the right of way in this circumstance. So OCGA § 40-6-72 (b) does not modify the general right of way rule declared in OCGA § 40-6-70 (a), which *does* provide guidance to drivers in this circumstance. The two Code sections can be harmonized. See *Humphreys v. Kipfmiller*, 237 Ga. App. 572, 575 (2) (515 SE2d 878) (1999) (rejecting interpretation of OCGA § 40-6-72 that would "lead to the absurd result that a driver legitimately stopped at a stop sign could never, under any circumstance, momentarily gain the right of way to cross the intersection") (citation omitted); see also *Ramos-Silva v. State Farm Mut. Ins. Co.*, 300 Ga. App. 699, 701 (686 SE2d 345) (2009) (all statutes relating to the same subject-matter should be construed together and harmonized wherever possible).

Accordingly, under the plain language of OCGA § 40-6-70, the general right of way rule declared in that Code section applies to drivers who arrive simultaneously

5

at an intersection controlled by four-way stop signs. See generally *City of Atlanta v. City of College Park*, __ Ga. __, __ (__ SE2d __) (Case No. S11G1839, decided March 28, 2013) (fundamental rules of statutory construction require us to construe statutes according to their terms and give words their plain and ordinary meaning). This construction also is consistent with the interpretation given OCGA § 40-6-70 by the Department of Driver Services in its "Driver's Manual" (a certified copy of which was entered into evidence in this case), which instructs Georgia drivers: "At a four-way intersection where all drivers are faced with stop signs, . . . [i]f two vehicles reach the intersection at approximately the same time, yield to any vehicles on your right." See generally David E. Shipley, The *Chevron* Two-Step in Georgia's Administrative Law, 46 Ga. L. Rev. 871, 923-935 (2012) (discussing Georgia courts' deference to agency interpretations of statutes).

Because the general right of way rule set forth in OCGA § 40-6-70 applies when two drivers arrive simultaneously at an intersection controlled by four-way stop signs, the trial court erred in charging the jury that this rule did *not* apply in such circumstance. See *Action Sound v. Dept. of Transp.*, 265 Ga. App. 616, 621-622 (2) (594 SE2d 773) (2004) (holding that instruction that misstated the law was reversible error). Furthermore, because there was some trial evidence that the two vehicles in

6

this case arrived at the intersection at approximately the same time, and the jury instructions did not otherwise cover the Grahams' requested charges on OCGA § 40-6-70 and negligence per se based upon a violation of OCGA § 40-6-70, the trial court erred in refusing to give those requested charges. See *Taylor v. State*, 272 Ga. 744, 745 (1) (534 SE2d 76) (2000) ("It is error to refuse to give a charge . . . where the request is a correct statement of the law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given.") (citation and punctuation omitted); *Edmond v. Roberson*, 207 Ga. App. 101, 102-103 (2) (427 SE2d 74) (1993) (trial court erred in refusing to charge jury on negligence per se where evidence presented at trial showed defendant violated OCGA § 40-6-70).

We find no merit in Fallick's argument that any error was harmless. "[W]hen an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless." *Schriever v. Maddox*, 259 Ga. App. 558, 560 (1) (578 SE2d 210) (2003) (citation and punctuation omitted). Although the parties presented conflicting evidence about the circumstances leading to the collision, it is arguable that, under OCGA § 40-6-70, Graham had the right of way even under Fallick's depiction of those circumstances. Given that the question of which driver had the

7

right of way was central to the determination of negligence in this case, we cannot say that the trial court's erroneous instruction to the jury regarding right of way was harmless.

*Judgment reversed. Doyle, P. J., and Boggs, J., concur.*