## 77299. LASTER v. STAR RENTAL, INC.

(378 SE2d 320)

SOGNIER, Judge.

Robin Laster filed a multi-count complaint against Star Rental, Inc. (Star) seeking damages arising from the issuance of a warrant for her arrest for violation of OCGA § 16-8-19 pursuant to an affidavit from Star's employee, Anthony Tucker. In *Laster v. Star Rental*, 181 Ga. App. 609 (353 SE2d 37) (1987), we affirmed the trial court's grant of summary judgment to Star on the count alleging malicious prosecution. Upon remand to the trial court, Laster amended her complaint to allege a violation of 42 USC § 1983, and the case was tried before a jury. At the close of Laster's evidence the trial court granted Star's motion for a directed verdict and Laster appeals.

The record reveals that appellant acquired a set of bunk beds from appellee, signing appellee's form contract which provided that she would own the beds after payment of $10.25 per week for 104 weeks, or a total of $1,066. (The weekly sum was later increased when appellant also acquired a coffee table.) After making a number of payments, appellant defaulted under the terms of the contract. Following several threatening visits from representatives of appellee and after obtaining legal advice, appellant refused to make further payments or to return the furniture. After notifying appellant, without success, to return the property, appellee swore out a criminal warrant which charged appellant with violation of OCGA § 16-8-19, conversion of leased personal property. The criminal charge was dismissed on the day set for appellant's arraignment in exchange for appellant's prom-

ise to return the merchandise.

"A plaintiff in a § 1983 action must show (1) '[deprivation] "of a right secured by the 'constitution and laws' of the United States,"' and that (2) the defendant acted under color of state law. . . . The conduct causing the deprivation must be fairly attributable to the state in order to be conduct 'under-color-of-state-law.' This is characterized as the 'fair attribution' test." *Poss v. Moreland*, 253 Ga. 730, 731 (324 SE2d 456) (1985).

*Poss* follows the United States Supreme Court opinion in *Lugar v. Edmondson Oil Co.*, 457 U. S. 922 (102 SC 2744, 73 LE2d 482) (1982), and sets forth a two-part standard for determining whether state action is present, both parts of which must be satisfied. The first part focuses on the deprivation of a right arising under federal law. It must be caused by (a) the exercise of some right or privilege created by the state, or (b) a rule of conduct imposed by the state, or (c) a person for whom the state is responsible. The second requirement focuses on the party charged with the deprivation—the "actor." He or she must be a "state actor" in that (a) he or she is a state official, or (b) he or she has acted together with or has obtained significant aid from state officials, or (c) his or her conduct is otherwise chargeable to the state. *Poss*, supra at 731-732. The basis for the grant of a directed verdict in favor of appellee in the case sub judice was the trial court's finding that, using the fair attribution test, no state action existed here because appellee was a private "actor."

Appellant contends the trial court erred by granting the directed verdict because, contrary to the trial court's express finding, the requisite state action was present.

(a) Appellant first argues that because the warrant office of the Fulton County State Court actively participated in the issuance of the warrant and the marshal's office participated in the arrest, the requirement of state action has been met. However, the record shows the warrant office personnel merely followed a manual to determine which crime was alleged by the complainant and issued a warrant as prescribed by law, and the marshal's only action was delivery to appellant of the card which commanded her presence in court. We reject appellant's argument that these ministerial acts are similar to those of the probate courts in Oklahoma found to constitute "state action" by the United States Supreme Court in its recent decision in *Tulsa Collection Svcs. v. Pope*, 485 U. S. __ (108 SC 1340, 99 LE2d 565) (1988). In that case, a majority of the court found that an Oklahoma nonclaim statute offended the due process requirement of the United States Constitution because it was not merely a self-executing statute of limitation, but one which required "pervasive and substantial" involvement of the probate court in the nonclaim process by appointing an executor and issuing orders. 99 LE2d at 577.

Rather, here, as in *Hardee's Food Systems v. Hall*, 184 Ga. App. 586 (362 SE2d 143) (1987), "[w]e agree with [the trial court] that, as a matter of law, defendant's actions . . . do not constitute state action. . . . '(T)he mere fact that the [defendant was a complainant and a witness] in an action which itself was prosecuted under color of law does not make (its) complaining or testifying other than what it was, i.e., the action of (a) private (person) not acting under color of law.' [Cit.]" Id. at 588-589 (3).

(b) Appellant next argues that state action is present because appellee did rely on a statute, OCGA § 16-8-19, which was declared unconstitutional by the Georgia Supreme Court. In *State v. Russell*, 256 Ga. 503 (2) (350 SE2d 430) (1986), the Georgia Supreme Court found that OCGA § 16-8-19 (b) created an impermissible presumption regarding intent, and was therefore invalid. However, that court also specifically noted that "[t]he invalidity of subsection (b) . . . does not mean that the statute describing the offense of conversion of leased personal property is, in like manner, invalid." We find no support in the record for appellant's conclusory statement that appellee relied specifically and exclusively on subsection (b) (3) of the statute in swearing out the warrant, and agree with the trial court that OCGA § 16-8-19 (a), defining the crime of conversion of leased personal property, is not unconstitutional, either as written or as applied in this case. Accordingly, we reject appellant's argument that state action existed because of appellee's reliance on OCGA § 16-8-19.

"A directed verdict is proper '(i)f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' [Cit.]" *Carpenter v. Parsons*, 186 Ga. App. 3, 4 (2) (366 SE2d 367) (1988). The evidence is not in conflict in this case as to the material facts. From those facts, we have determined the trial court was correct in finding that appellee's actions may not fairly be attributed to the state. We note that we share both appellant's and the trial court's concern and abhorrence for the practice employed by appellee, which utilizes a legitimate state criminal procedure for the questionable and no doubt unintended purpose of collecting civil debts (and we note that the legislature has since repealed OCGA § 16-8-19, Ga. L. 1988, p. 763, § 2, eff. July 1, 1988). The Canons of Ethics, Code of Professional Responsibility, EC 7-21, provides that "[t]hreatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of [the civil adjudicative] process," and Directory Rule 7-105 prohibits attorneys from presenting, or threatening to present, criminal charges solely to obtain an advantage in a civil matter. While it is clear that the warrant in this case was not filed by an attorney, and we do not intimate otherwise, the ethical consideration cited is indicative of our state's public policy in this re-

gard. However, for the reasons previously stated, we find that a verdict in favor of appellee was demanded and we affirm the trial court's grant of appellee's motion for a directed verdict.

*Judgment affirmed. Carley, C. J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

This writer has reservations about joining the majority opinion's expression of sympathy for the appellant over the appellee's resort to OCGA § 16-8-19, as well as its condemnation of that statute.

First of all, I am not so sure that the legislative intent behind the statute did not include a motivation to promote payment of lease obligations. "Why should not a man pay what he owes, and perform what he promises? If he will ·not do so voluntarily, why should not society, through wholesome laws, compel him?" Fidelity to contracts is essential to private virtue and to public order and prosperity." *Johnson v. Griffin Banking &c. Co.*, 55 Ga. 691, 695 (1876). Attaching a criminal penalty for nonpayment of a lease obligation or refusal to return the leased property deters and eliminates the negative of nonpayment and nonreturn and promotes and accentuates the positive plan and program of payment and return. Secondly, contrary to the majority opinion's implication that the legislature recently repealed OCGA § 16-8-19 because creditors used it to collect debts, more than likely the repeal merely resulted from the Supreme Court's invalidation of subsection (b) of the statute that allowed an impermissible presumption. See *State v. Russell*, 256 Ga. 503 (350 SE2d 430) (1986). The legislature obviously did not see fit to eliminate the crime of theft by conversion of leased property, since it added that specific crime to the general statute on theft by conversion found at OCGA § 16-8-4, at the same time of the repeal of OCGA § 16-8-19. The procedure utilized by the appellee in this case thus remains available.

The majority opinion also refers to the State Bar's Code of Professional Responsibility in suggesting that the appellee was unethical in utilizing OCGA § 16-8-19, and states that that Code of Professional Responsibility (which was promulgated by the Supreme Court) indicates this state's public policy on this matter. "[A]n emphatic statement should be made . . . that the legislature, *and not the courts*, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional." *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963). (Emphasis supplied.) Holding otherwise constitutes a judicial usurpation of a legislative prerogative. With these stated reservations, I concur in the majority opinion's judgment of affirmance.

DECIDED JANUARY 5, 1989 —
REHEARING DENIED JANUARY 24, 1989 —

*Remar & Graettinger, John S. Graettinger, Jr.*, for appellant.
*Davis, Price & Young, Robert E. Price*, for appellee.