A03A0744. PROGRESSIVE AMERICAN INSURANCE COMPANY
v. HORDE.
(577 SE2d 835)

ELDRIDGE, Judge.

Plaintiff-appellee, Gaither W. "Rocky" Horde III, brought the instant action against his insurer, defendant-appellant Progressive American Insurance Company, after Progressive denied Horde coverage under a policy exclusion for damage to his Dodge Viper GTS ("Viper") sustained as he hit the wall after exiting Turn No. 1 at the Road Atlanta Racetrack. Pertinently, the policy exclusion barred coverage "to a covered vehicle or non-owned vehicle resulting from . . . practice or preparation for any [pre-arranged or organized racing, speed or demolition] contest or [stunting] activity."[1] A State Court of Fulton County jury returned a verdict for Horde, awarding him $37,368.73 in compensatory damages, $7,099.94 in bad faith damages, and $25,821.75 in attorney fees. Progressive appeals from the denial of its motion for directed verdict, made at the close of Horde's case, as to the existence of coverage upon Horde's claim and its liability for attorney fees and penalty under OCGA § 33-4-6 for bad faith refusal to pay an insurance claim. Finding these claims of error to be meritorious, we reverse. *Held*:

1. Whether upon motion for directed verdict or judgment notwithstanding the verdict, "[w]here there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554) (1983). Construing the evidence in the light most favorable to nonmovant Horde, *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991), the undisputed evidence shows that Horde's accident occurred on a "track day" at the Road Atlanta Racetrack conducted as a part of a three-day racing class provided by the Panoz Racing School in which he was then enrolled; that the objective of Panoz's three-day racing class was to teach students the basic skills necessary to drive a car "at speeds" over a racing circuit;[2] that, having modified his Viper for racing and in the company of a Panoz instructor providing him instruction, Horde drove his Viper in excess of 140 mph at the Road Atlanta Racetrack on the day the accident occurred; that as a Panoz advanced "A" rated driver, Horde was authorized to drive his Viper at such speed; that, in conjunction with

---

[1] The policy exclusion, in its entirety, barred coverage "to a covered vehicle or non-owned [covered] vehicle resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity."

[2] A Panoz instructor defined "at speeds" as "a speed that is nearly as quick as the car is capable of going on that particular section of road."

his enrollment in the Panoz Racing School, Horde applied for a competition license; that Horde obtained a physical examination in support of his application to race competitively; that Horde, while driving "at speeds," crashed his vehicle into the racetrack retaining wall; and that, at trial, Horde conceded he applied to race competitively thinking that he might want to do so at some future date.

Under the foregoing circumstances, Horde was plainly practicing or preparing for racing activity within the meaning of the policy exclusion at issue prior to and at the time of his collision with a fixed object.

> In construing an insurance contract, [the] court[s] must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other. [*Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (498 SE2d 492) (1998).] The policy should be read as [the] layman would read it. [*Nationwide Mut. Ins. Co. v. Collins*, 136 Ga. App. 671 (222 SE2d 828) (1975).] Additionally, exclusions will be strictly construed against the insurer and in favor of coverage.

(Footnotes omitted.) *York Ins. Co. v. Williams Seafood of Albany*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001). Nevertheless, in an action on an insurance policy, the insured must show that his or her claim of insurance coverage lies within the type of risk insured against in order to establish a prima facie case. *Calabro v. Liberty &c. Ins. Co.*, 253 Ga. App. 96, 97 (557 SE2d 427) (2001); *Ga. Farm &c. Ins. Co. v. Alloway*, 134 Ga. App. 660, 661 (215 SE2d 506) (1975). A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998). The plain meaning of the policy exclusion in issue is undisputed. Evidence of practice or preparation for competitive racing within the meaning of the policy exclusion is likewise undisputed and overwhelming. Accordingly, the state court erred in denying Progressive a directed verdict.

2. " 'To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was in bad faith. [Cits.]' " *Southern Fire &c. Ins. Co. v. Northwest Ga. Bank*, 209 Ga. App. 867 (2) (434 SE2d 729) (1993). Progressive's motion for a directed verdict as denied in error, Division 1, supra, the jury verdict for Horde as to attorney fees and a penalty under OCGA § 33-4-6 was likewise error. " 'As a matter of law, bad faith penalties and attorney fees under OCGA § 33-4-6 are not awardable if an

insurer has a reasonable and probable cause for refusing to pay a claim. . . .'" (Citations and punctuation omitted.) *Jones v. State Farm &c. Ins. Co.*, 228 Ga. App. 347, 350 (3) (491 SE2d 830) (1997); see also *St. Paul Mercury Ins. Co. v. Meeks*, supra.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 5, 2003 —
RECONSIDERATION DENIED FEBRUARY 19, 2003 — 

*Brockman & Teague, Jonathan R. Brockman, James S. Teague, Jr.*, for appellant.

*Temple, Strickland, Dinges & Schwartz, William D. Strickland*, for appellee.