A06A2295, A07A0096. J. KINSON COOK OF GEORGIA, INC.
v. HEERY/MITCHELL; and vice versa.
(644 SE2d 440)

BERNES, Judge.

J. Kinson Cook of Georgia, Inc. ("JKCI") brought this lawsuit against Heery/Mitchell, a joint venture, and several other defendants seeking damages arising from a construction project. Heery filed a motion for summary judgment on all of JKCI's claims, which the trial court granted. JKCI appealed, but we remanded for the trial court's consideration of Heery's motion to dismiss the appeal based on JKCI's alleged failure to pay costs timely. Following remand, the trial court denied Heery's motion.

In Case No. A07A0096, Heery appeals from the trial court's denial of its motion to dismiss. In Case No. A06A2295, JKCI appeals from the trial court's grant of summary judgment in favor of Heery. For the reasons set forth below, we affirm in both cases.

*Case No. A07A0096*

Heery appeals from the trial court's decision denying its motion to dismiss JKCI's appeal for failure to pay costs timely pursuant to OCGA § 5-6-48 (c). That statute provides in relevant part:

> the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence; provided, however, that no appeal shall be dismissed for failure to pay costs if costs are paid within 20 days (exclusive of Saturdays, Sundays, and legal holidays) of receipt by the appellant of notice, mailed by registered or certified mail or statutory overnight delivery, of the amount of costs.

OCGA § 5-6-48 (c). "When making factual determinations based upon evidence presented at a hearing on the question of dismissal, the trial

court is vested with a broad discretion to decide whether the appeal should be dismissed." (Punctuation and footnote omitted.) *Park Regency Partners v. Gruber*, 271 Ga. App. 66, 70 (1) (608 SE2d 667) (2004).

The period for determining the delay begins on the day notice is received from the trial court. *Fun Fit Enterprises v. Halpern Enterprises*, 273 Ga. App. 685, 686 (616 SE2d 466) (2005). "[T]his Court has held that a delay of more than 30 days in paying costs is prima facie unreasonable and inexcusable." (Citations and punctuation omitted.) *Leonard v. Ognio*, 201 Ga. App. 260, 261 (410 SE2d 814) (1991). However, this inference is not conclusive and may be rebutted by evidence presented by the appealing party. Id. "The threshold question whether the delay was *unreasonable* refers principally to the length and effect of the delay. . . . [T]he policy of the law is to avoid a dismissal of the appeal and reach the merits of the case where it is reasonable to do so." (Citations and punctuation omitted; emphasis in original.) *Sellers v. Nodvin*, 262 Ga. 205, 206-207 (1) (b) (415 SE2d 908) (1992).

Here, the trial court did not err in determining that JKCI's evidence rebutted the prima facie presumption of an unreasonable and inexcusable delay. The record establishes that the original bill of costs was erroneously mailed to the former address of JKCI's counsel, which delayed its receipt. When JKCI's counsel finally received the original bill of costs on September 16, 2005, he forwarded it to JKCI for direct payment to the trial court clerk. JKCI promptly mailed a check to the clerk within 20 days of counsel's receipt of the original bill of costs, excluding weekends and holidays. In the meantime, the clerk issued a revised bill of costs to the proper address of JKCI's counsel. Upon further inquiry, JKCI's counsel was informed by the clerk that the prior check had not been received. Consequently, JKCI stopped payment on its prior check and immediately delivered a new check to the clerk within 20 days of the revised bill of costs. Based upon these circumstances, the trial court was authorized to find that JKCI attempted to tender prompt payment of the bill of costs subsequent to its receipt and that any delay in the clerk's receipt of payment was not unreasonable or inexcusable. And, since the evidence does not reflect that the delay in paying the costs appreciably lengthened the litigation or prejudiced Heery, we discern no abuse of discretion in the trial court's decision. *Jim Walter Homes, Inc. v. Strickland*, 185 Ga. App. 306, 307 (363 SE2d 834) (1987).

## Case No. A06A2295

JKCI appeals from the trial court's grant of summary judgment in favor of Heery on all of its claims.[1]

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record evidence shows that in January 2000, JKCI, a general contractor, entered into a contract with the DeKalb County School District to build the New Salem Area High School. The school district contracted with Heery to provide professional construction program management services for the project. As the school district's agent, Heery made recommendations for the construction project, reviewed and advised the school district on change order proposals, and reviewed and consulted with the school district regarding contractor pay requests. The school district paid the invoices and retained control over the contract funds.

Pursuant to the parties' agreement, the construction schedule was accelerated so that the project would be substantially completed by July 31, 2001 in time for the 2001 academic year. But, in May 2000, JKCI began to fall behind schedule. Heery asserts that one month later, progress on the project substantially decreased. As the completion deadline drew near, Heery's representatives toured the job site and discovered that no JKCI workers were present.[2] Heery was advised that JKCI's subcontractors were not being timely paid, and several subcontractors began to contact Heery seeking payment.

---

[1] JKCI also enumerates as error the denial of its motion for reconsideration. However, we do not reach the merits of JKCI's motion since it was an improper attempt to attack the trial court's judgment outside the term of court without setting forth a basis under OCGA § 9-11-60 (d). The trial court entered final judgment on its order granting summary judgment in Heery's favor. Since the court's term had expired before the filing of JKCI's motion for reconsideration, the judgment was no longer within the breast of the court and could not be set aside or altered. OCGA § 9-11-60 (d). See also OCGA § 15-6-3 (37); *Gabel v. Revels*, 203 Ga. App. 131, 132 (416 SE2d 103) (1992).

[2] Although JKCI contends that its records reflect that it had 109 workers plus supervisory personnel at the site on the day that Heery representatives visited, it failed to present those records and offered no testimony from anyone allegedly present at the site to confirm the presence of its workers.

Thereafter, Heery contends that it took emergency measures to timely complete the project, including the hiring of more construction crews and rendering payment directly to the subcontractors.

JKCI initially did not object to Heery's measure of hiring more construction crews, and advised that it "appreciate[d] all the help anyone [could] provide . . . in attempting to make the owners['] requested use date possible." However, JKCI now claims that Heery's measure of bypassing JKCI to deal directly with its subcontractors breached JKCI's contract with the school district and interfered with the completion of the construction. JKCI thus maintains that Heery's emergency measures caused problems rather than solved them.

Despite the problems encountered, JKCI continued to serve as the contractor throughout the project until its completion. When JKCI submitted its pay request, Heery allegedly advised the school district to withhold payment for the costs incurred to hire the additional construction crews. According to JKCI, Heery had previously assured JKCI that it would be paid and that the school district would not impose any back charges upon JKCI for the additional costs.

JKCI subsequently commenced the instant lawsuit against Heery, asserting claims of (a) negligence and breach of duty; (b) tortious interference with contract and business relationships; (c) conversion; (d) fraud and deceit; (e) civil conspiracy; (f) violation of the Georgia Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-14-1 et seq. ("RICO"); and (g) prejudgment interest, litigation costs, and punitive damages. The trial court granted summary judgment to Heery on all of these claims.

(a) *Negligence and breach of duty.* JKCI alleges that Heery negligently breached the duties that it owed to JKCI, which resulted in JKCI's damages. The trial court granted summary judgment in favor of Heery on the ground that JKCI's negligence and breach of duty claims were barred by Georgia's economic loss rule, OCGA § 51-1-11 (a). We agree with the trial court.

OCGA § 51-1-11 (a) provides that "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract. . . ." Where privity of contract between the parties does not exist, "to constitute a tort[,] the duty must arise independent of the contract." *Sheppard v. Yara Engineering Corp.*, 248 Ga. 147, 149 (281 SE2d 586) (1981). See also *Constr. Lender v. Sutter*, 228 Ga. App. 405, 409 (2) (491 SE2d 853) (1997).

JKCI alleges that Heery breached its duties by "failing to make clear and timely decisions, and making decisions that materially

changed the scope of JKCI's work under the terms of the [c]ontract," "failing to process approved change orders," and "failing to process pay requests submitted by JKCI." JKCI's claims essentially allege that Heery negligently supervised the construction project. The duties allegedly owed by Heery only arose from its contractual duty to act as the school district's agent during the construction project. JKCI has not asserted any legal duty that Heery owed independent of the contract. But, Heery's contract was with the school district, and JKCI was not in privity to that contract. In light of the lack of contractual privity and lack of an independent duty owed by Heery to JKCI during the project, JKCI's claims must fail. *Constr. Lender*, 228 Ga. App. at 409 (2).

It is true that

> [t]his court and the Supreme Court have recognized an exception to the privity requirement in cases of negligent misrepresentation by a professional, reasonably relied upon by a foreseeable person or class of persons. See *Rhodes-Haverty Partnership v. Robert & Co. Assoc.*, 163 Ga. App. 310 (293 SE2d 876) (1982), aff'd 250 Ga. 680 (300 SE2d 503) (1983). However, as noted by the court in *Gulf Contracting v. Bibb County*, 795 F2d 980[, 982, n. 2] (11th Cir. 1986), no similar exception has been carved out for a professional's alleged negligent failure to supervise a project.

*Wood Bros. Constr. Co. v. Simons-Eastern Co.*, 193 Ga. App. 874, 875 (1) (389 SE2d 382) (1989). See also *Smiley v. S & J Investments*, 260 Ga. App. 493, 495-496 (1) (580 SE2d 283) (2003); *Carolina Cas. Ins. Co. v. R. L. Brown & Assoc.*, 2006 U. S. Dist. LEXIS 89412, at *14-20 (N.D. Ga. 2006). JKCI's claims against Heery do not allege negligent misrepresentation. Consequently, the exception to the privity requirement does not apply here. Accordingly, the trial court did not err in granting summary judgment in favor of Heery on this claim.

(b) *Tortious interference with contract and business relationships.* JKCI alleges that Heery tortiously interfered with its relationships with its subcontractors by bypassing it and giving directions directly to subcontractors during the project. JKCI further alleges that Heery tortiously interfered with its surety relationship by making false statements that it had failed to pay the subcontractors. According to JKCI, Heery's actions prevented JKCI from obtaining bonding, which caused it to lose business opportunities.

The elements of tortious interference with contractual relations, business relations, or potential business relations

are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. . . . [T]he defendant must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract; thus, all parties to an interwoven contractual arrangement cannot be liable for tortious interference with any of the contracts or business relationships that underlie such contractual arrangement.

(Citation omitted.) *Dalton Diversified v. AmSouth Bank*, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004). See also *Atlanta Market Center Mgmt. v. McLane*, 269 Ga. 604, 608-609 (2) (503 SE2d 278) (1998). In granting summary judgment to Heery on JKCI's tortious interference claims, the trial court found that Heery was not a stranger to the contract and business relationships at issue. Again, we agree with the trial court.

The record reflects that the entire project encompassed "a comprehensive interwoven set of contracts" providing for the construction of the New Salem Area High School. JKCI and its subcontractors contracted to provide construction services for the project, while JKCI's surety provided bonding for the project. The evidence presented shows that Heery's alleged acts were undertaken in its capacity as the construction project manager and the school district's agent to ensure the proper and timely completion of the project. As such, it is clear that Heery was not a stranger to the contract and business relationship between JKCI and the subcontractors that were working on the project. Nor was Heery a stranger to the contractual relationship between JKCI and its surety. As a result, JKCI's claims for tortious interference fail as a matter of law.

While JKCI argues that Heery was a stranger to the other projects and potential business opportunities that were lost as a result of its inability to obtain bonding, JKCI has failed to present any evidence that Heery contacted the surety about any project besides the one at issue here. Likewise, the unrefuted evidence shows that Heery did not contact or take any improper action with regard to any of JKCI's potential customers. JKCI therefore has not established a claim for tortious interference, and the trial court's summary adjudication on this issue was proper. See *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting*, 205 Ga. App. 57, 60-61 (1)

(421 SE2d 295) (1992). See also *Atlanta Market Center Mgmt.*, 269 Ga. at 608-609 (2); *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (3) (597 SE2d 571) (2004).

(c) *Conversion.* In its conversion claim, JKCI alleges that Heery exercised rights of ownership and dominion over funds belonging to JKCI. "Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." (Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987). Where there is no evidence that the defendant possesses any of the funds or items allegedly converted, an action for conversion must fail. See *Johnson v. First Union Nat. Bank*, 255 Ga. App. 819, 823 (4) (567 SE2d 44) (2002).

The evidence establishes that Heery did not possess or exercise dominion over any of the funds which are the subject of JKCI's claim. Heery only reviewed and made recommendations to the school board regarding pay requests for the project. Heery's review of the pay requests did not equate to its possession or exercise of dominion over the school board's funds used to pay for the project. The funds belonged to the school board, the ultimate decision regarding payment remained vested in the school board, and checks for payment of JKCI's services were paid from the county bank accounts. Hence, JKCI failed to provide evidence to support its conversion claim, and summary judgment in favor of Heery was proper. *Johnson*, 255 Ga. App. at 823 (4).

(d) *Fraud and deceit.* JKCI alleges that Heery defrauded it by "repeatedly misrepresenting . . . that they intend to release and pay to JKCI amounts due . . . with the intent and purpose of . . . deceiving JKCI to provide additional and continuing services . . . [knowing] at the time they made [the] misrepresentations that the misrepresentations were false." In support of its allegations, JKCI presented the affidavit of J. Kinson Cook, attesting that Heery represented that "if JKCI continued to perform work, and performed additional work, JKCI would get paid." Cook further averred that he "believe[d]" that while making these representations to JKCI, Heery was informing the school board that JKCI should not get paid in full for its work on the project.

JKCI's claims fail because "[t]he general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." (Citations and punctuation omitted.) *Hamilton v. Advance Leasing &c.*, 208 Ga. App. 848, 850 (2) (432 SE2d 559) (1993).

To the extent that JKCI's claims are based upon Heery's representation that it would pay JKCI for additional work that had not yet been performed, they are merely predicated upon an unenforceable promise to perform an act in the future. As such, these allegations and evidence fail to establish an actionable claim for fraud. See *Fuller v. Perry*, 223 Ga. App. 129, 131 (1) (476 SE2d 793) (1996).

However, "[a]n exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." (Citation and punctuation omitted.) *Hamilton*, 208 Ga. App. at 849 (2). JKCI contends that its fraud claim fits this exception in light of the allegations and evidence that Heery represented to JKCI that there would be no back charges arising from the extra work required to complete the school in time for the 2001 academic year, while at the same time informing the school district that JKCI would in fact be back charged.

We are unpersuaded. Even if JKCI's allegations could be construed as setting forth an actionable fraud claim, its own evidence refutes its allegations. In response to the motion for summary judgment, JKCI submitted the Cook affidavit with supporting documentation attached as evidence of its claims. The attached evidence includes a letter dated July 20, 2001 from Heery's representative to JKCI and the other parties involved with the project specifically warning that the school system would back charge JKCI's contract for the added labor arrangements made to ensure timely completion of the project. Contrary to JKCI's allegations, it is clear that Heery made the parties, including JKCI, aware of its intent to back charge JKCI's contract. Cook's affidavit is otherwise vague and equivocal as to whether Heery made any alleged representations assuring payment to JKCI before the July 20, 2001 letter. And, Cook's affidavit merely speculates that Heery was informing the school board to back charge JKCI's contract for the cost of the additional labor while at the same time assuring JKCI that it would be paid.

This evidence is insufficient to show that Heery made fraudulent representations to JKCI regarding payment with a present intent not to perform. "The testimony of a respondent on summary judgment is to be construed against her where it is self-contradictory, vague, or equivocal." *Anglin v. Harris*, 244 Ga. App. 140, 142 (1) (534 SE2d 874) (2000). Likewise, self-serving and conclusory affidavits are insufficient to create an issue for trial. *Foster v. Ramsey*, 245 Ga. App. 118, 119 (1) (536 SE2d 550) (2000). "[A]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Constr. Lender*, 228 Ga. App. at 408 (1) (b). Cook's self-serving averments in his affidavit, contradicted by the dispositive evidence attached

thereto, do not create a genuine issue of fact. Summary judgment in favor of Heery as to this claim was authorized.

(e) *Civil conspiracy.* JKCI alleges that Heery and the other defendants conspired to injure its business. Summary judgment also was properly granted as to this claim.

> A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.

(Citations and punctuation omitted.) *Mustaqeem-Graydon v. Sun-Trust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002). Because JKCI's underlying tort claims have failed, it cannot maintain a cause of action for conspiracy. Id.

(f) *Georgia RICO.* In its amended complaint against Heery, JKCI further alleges that Heery engaged in a pattern of racketeering activity under the Georgia RICO statute. JKCI contends that Heery engaged in similar or identical patterns of racketeering activity in other construction projects. JKCI's claims also are predicated upon Heery's alleged acts of fraud and conversion. Since JKCI's fraud and conversion claims failed as a matter of law, the trial court also entered summary judgment in favor of Heery on the RICO claim. We find no error.

Under the Georgia RICO statute,

> "[p]attern of racketeering activity" means . . . [e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents.

OCGA § 16-14-3 (8) (A). Although JKCI alleges that Heery engaged in similar or identical patterns of racketeering activity in other construction projects, it has failed to point to any evidence in support of this allegation. Moreover, JKCI has failed to establish claims of fraud and conversion, upon which its Georgia RICO claims are predicated. It follows that the Georgia RICO claims alleged by JKCI fail as a matter of law. See *Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 39 (2) (f) (576 SE2d 288) (2002).

(g) *Prejudgment interest, litigation costs, and punitive damages.* Although JKCI seeks recovery of prejudgment interest, litigation

costs, and punitive damages as part of its relief under the claims of its amended complaint, they are not recoverable since its substantive claims have failed. *Hopkinson v. Hopkinson*, 239 Ga. App. 518, 519 (2) (521 SE2d 453) (1999) ("Because litigation expenses (costs and attorney fees) are wholly ancillary, they are not recoverable when no damages are awarded.") (citation and punctuation omitted); *Barnes v. White County Bank*, 170 Ga. App. 681 (318 SE2d 74) (1984) ("Punitive damages may not be recovered where there is no entitlement to compensatory damages.") (citation omitted).

*Judgments affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 27, 2007.

*Stephen J. Anderson*, for appellant.

*Hawkins & Parnell, Jack N. Sibley, Robert S. Thompson*, for appellee.