## A11A1346. CAPITAL FINANCIAL SERVICES GROUP, INC. v. HUMMEL et al.

### (721 SE2d 108)

SMITH, Presiding Judge.

In this action for conversion, Capital Financial Services Group, Inc. ("Capital"), solely owned by Michael Levy, appeals from the trial court's grant of summary judgment to Levy's ex-wife Sirka Hummel and the law firm representing Hummel in a divorce action filed by Levy. Because the trial court properly granted summary judgment to Hummel and the law firm, we affirm.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. [Cit.]" *Simprop Acquisition Co. v. L. Simpson &c. Unitrust*, 305 Ga. App. 564 (1) (699 SE2d 860) (2010). So viewed, the record reveals that in November 2007, Levy filed for divorce from his then wife Hummel. The law firm of Warner, Mayoue & Bates, P.C. ("Warner, P.C.") represented Hummel in the divorce action. On March 11, 2009, during the divorce proceedings, the trial court entered a standing order which provided in part:

> Each party to a divorce or separate maintenance action is hereby enjoined and restrained from selling, encumbering, trading, contracting to sell, or otherwise disposing or removing from the jurisdiction of the court, any of the property belonging to the parties except in the ordinary course of business.

Warner, P.C. sent letters to Scottrade and Wachovia informing them of the standing order with a copy of the order attached. In response, Wachovia and Scottrade froze Levy's accounts. Levy filed a "Motion for Equitable Relief and Modification of the Standing Order" on May 18, 2009, seeking in part to compel Warner, P.C. to contact Scottrade and Wachovia to inform them that he "is not prohibited from having access to the funds, or the accounts." Before the court ruled on Levy's motion, Scottrade and Wachovia released their respective holds placed on Levy's accounts after being contacted by either Levy's counsel or Hummel's counsel, Warner, P.C.

On August 3, 2009, nunc pro tunc to June 19, 2009, the trial court denied Levy's motion for equitable relief, ruling that the standing order was a matter of public record and that Warner, P.C. properly published, i.e., issued copies of the order, to the financial institutions holding Levy's accounts. The court also noted that "counsel for [Hummel] did attempt to ameliorate any damages to [Levy], if any, by their cooperation with [Levy's] counsel."

Although not included in the record here on appeal, the parties agree that Levy and Hummel entered into a settlement agreement, and a final judgment and decree of divorce was entered on April 7, 2010. Around May 14, 2010, Levy, as the sole shareholder, director, and officer of Capital, attempted to execute a stock trade on Capital's behalf using a TD Ameritrade ("Ameritrade") account. Levy was informed by Ameritrade that, in response to a letter from Warner, P.C., the account had been subject to a "civil levy" or "third preliminary injunction" since March 11, 2009 (the date of the standing order), and that either a court order or confirmation from Warner, P.C. would be necessary for the account to be released. Capital sent a letter to Warner, P.C. demanding that it contact Ameritrade to inform Ameritrade that Capital's account should be released. Warner, P.C. responded that although it sent a letter and copy of the standing order to Ameritrade, the firm had not directed Ameritrade to place a "civil levy" on Capital's Ameritrade account. It also asked Levy to request Ameritrade to contact Warner, P.C. to resolve the issue. When the account was not released, Capital filed a complaint for conversion against Warner, P.C. and Hummel.

Warner, P.C. and Hummel moved for summary judgment on Capital's conversion claim on the ground it was barred by collateral estoppel because the trial court had previously ruled that Warner, P.C. properly issued copies of the standing order. Capital responded to the motion, arguing that the elements of conversion demonstrate that collateral estoppel is not a defense, and that in any case the failure to instruct Ameritrade to release its account after being notified of the problem is a "separate and distinct act supporting a claim for conversion."

At the hearing on the motion, Warner, P.C. and Hummel argued that collateral estoppel barred relitigation of the issue of whether they properly published the standing order, and also argued that there is no cause of action for conversion because there was "no holding of that account by [Warner, P.C.] or anything else." Warner, P.C. and Hummel then asked the court to "grant a summary judgment for [Warner, P.C. and Hummel] saying that there's no cause of action, and that judgment is a matter of law in favor of Ms. Hummel, as well as [Warner, P.C.]." Capital argued at the hearing that defense counsel's "representation [of] ownership [as] a function of conversion is incorrect," and explained what it considered to be the elements necessary to prove conversion. Capital argued further at the hearing that the trial court's previous ruling — that Warner P.C. and Hummel properly issued copies of the standing order — was irrelevant to its conversion claim, and then argued to the court that collateral estoppel did not bar its conversion claim.

Following the hearing, the trial court entered an order granting Warner, P.C.'s and Hummel's motion for summary judgment but containing no recitation of facts or analysis. The court also entered an "Order Releasing Accounts" informing Ameritrade that Levy's divorce was final as of April 30, 2010, and ordering Ameritrade to release Capital's accounts.

Capital argues on appeal that the evidence demonstrates that Warner, P.C. was in control of its Ameritrade account and that collateral estoppel does not bar its conversion claim. We find that the trial court properly granted summary judgment because the undisputed facts before the trial court show that Capital cannot establish the elements necessary to support a cause of action for conversion as a matter of law.

"Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." (Citation and punctuation omitted.) *J. Kinson Cook &c. v. Heery/Mitchell*, 284 Ga. App. 552, 558 (c) (644 SE2d 440) (2007).

> Moreover, it is immaterial that such dominion was exercised in good faith, for whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith. In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3)

demand for return of the property, and (4) refusal by the other party to return the property.

(Citation, punctuation and footnote omitted.) *Trey Inman & Assoc. v. Bank of America*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010).

Capital has failed to show an act of dominion or exercise of the right of ownership over, or unauthorized appropriation of its Ameritrade account by Warner, P.C. Here, Warner, P.C. did not place the hold on Capital's account, nor did it have the authority to do so. See *J. Kinson Cook &c.*, supra, 284 Ga. App. at 558 (c) (because construction management company only reviewed and made recommendations regarding pay requests for school construction project, it did not possess or exercise dominion over funds for project where school district paid invoices and retained control over funds). And Ameritrade's interpretation of Warner, P.C.'s letter and the trial court's standing order did not constitute an unauthorized appropriation by Warner, P.C.[1] See *Both v. Frantz*, 278 Ga. App. 556, 558-559 (1) (629 SE2d 427) (2006) (no conversion of funds by law firm where firm prepared power of attorney that allowed couple's daughter and a third party to withdraw funds from husband and wife's joint account).

Capital argues in the alternative that Warner, P.C. is also liable for conversion for failing to contact Ameritrade after being notified that Capital's account had been frozen. But Warner, P.C. cannot be held liable for conversion for the failure to release dominion or control over Capital's property when it did not exercise that control. Compare *Glisson v. Freeman*, 243 Ga. App. 92, 106 (2) (532 SE2d 442) (2000) (broker's wrongful transfer of funds from one account to another account and refusal to reverse transfer deprived account holder of her property).

Because Capital has failed to show an act of dominion or exercise of the right of ownership by Warner, P.C. over its Ameritrade account, the trial court properly granted summary judgment to Warner, P.C. on Capital's conversion claim.

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 9, 2011 —
RECONSIDERATION DENIED DECEMBER 13, 2011 — 

*Isenberg & Hewitt, Ryan L. Isenberg*, for appellant.

---

[1] We note that Levy, the sole officer of Capital, did not appeal from the trial court's ruling that Warner, P.C. properly published the trial court's standing order.

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Terry O. Brantley, Ariel D. Zion*, for appellees.